

NO JS-6

ENTERED
CLERK, U.S. DISTRICT COURT

JAN 1 2 1999

CENTRAL DISTRICT OF CALIFORNIA
BY ___ JA ___ • DEPUTY

FILED

JAN 1 1 1999

CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO D. OASAY AND CARLINA P. OASAY,<br><br>          Plaintiffs,<br><br>vs.<br><br>FEDERAL NATIONAL LOAN MORTGAGE CORPORATION, a foreign corporation, CTC FORECLOSURE SERVICES CORPORATION, COUNTRYWIDE HOME LOANS, INC., MORTGAGE CAPITAL RESOURCE CORPORATION, and DOES 1 through 20, inclusive,<br><br>          Defendants. | CASE NO. CV 98-1703 DT (JGx)<br><br>ORDER **GRANTING** DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY
FIRST CLASS MAIL, POSTAGE PREPAID, TO ALL COUNSEL
(OR PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF
RECORD IN THIS ACTION ON THIS DATE.

DATED: _1/12/99_

DEPUTY CLERK _____

I.   **Background**

     A.   **Factual Summary**

          Plaintiffs Antonio D. Oasay and Carlina P. Oasay

("Plaintiffs") bring a complaint against Defendants Federal

National Loan Mortgage Corporation, CTC Foreclosure Services

• Docketed
• Mld copy Ptys
• Mld Notice Ptys
• N. JS-6



ENTERED ON ICMS   1/14/99   28

1 | Corporation, Countrywide Home Loans, Inc. and Mortgage Capital
2 | Resource Corporation to Set Aside Trustee's Sale, to Cancel
3 | Trustee's Deed, Declaratory Relief, Breach of Contract,
4 | Cancellation of Instrument and Accounting.

5 |      The following facts are undisputed:

6 |      Plaintiffs bought the subject property located at 210
7 | East 222nd Street, Carson, California ("Property") in late 1989.
8 | They obtained title to the Property by grant deed recorded on
9 | February 23, 1990.  They paid $265,000 for the Property.  They
10 | obtained $165,000 of the purchase price from the sale of
11 | previously owned property, and they borrowed $105,000 of the
12 | purchase price from Columbia Savings and Loan ("Columbia").
13 | Columbia received a promissory note and deed of trust.
14 | Plaintiffs made payments to Columbia for a year or two.

15 |      Plaintiffs also borrowed $70,000 from Western Bank
16 | ("Western").  They gave Western a note secured by a deed of trust
17 | encumbering the Property.  They then refinanced the Columbia and
18 | Western debts with a new loan from Mortgage Banker's Acceptance
19 | Company ("MBAC").  This $180,000 loan from MBAC discharged the
20 | two prior loans to Columbia and Western and paid the closing
21 | costs.  Plaintiffs gave MBAC a promissory note and deed of trust
22 | for the $180,000 debt.

23 |      The loan from MBAC was assigned to Defendant
24 | Countrywide Home Loans, Inc. ("Countrywide").  Plaintiffs made
25 | payments to Countrywide from 1993 through early 1997.  They
26 | defaulted with a payment due on February 1, 1997.  Countrywide
27 |
28 |         2

prepared and recorded a notice of default and election to sell on
May 5, 1997, as instrument no. 97-676727 in the official records
of the Los Angeles County Recorder's Office.  The notice of
default was sent to Plaintiffs by first class mail and by
certified mail.  More than three months later, when Plaintiffs
had not cured the default, Countrywide recorded a notice of
trustee's sale on August 8, 1997, as instrument no. 97-1223522 in
the official records of the Los Angeles County Recorder's Office.
The notice of trustee's sale was sent to Plaintiffs by first
class mail and by certified mail.  The notice of trustee's sale
was posted on Plaintiffs' Property and in a public place in Los
Angeles.  It was properly published in a newspaper of general
circulation.

        The trustee's sale was originally scheduled for August
27, 1997.  Antonio Oasay filed a Chapter 13 bankruptcy petition
on August 25, 1997.  While the bankruptcy stay was in effect, the
trustee's sale was postponed to September 10, 1997, to September
24, 1997, and to November 18, 1997.  On October 3, 1997, the
Bankruptcy Court sent a notice that Mr. Oasay's bankruptcy case
had been dismissed.  On November 18, 1997, the trustee sale was
conducted, and the property was sold to Federal National Mortgage
Association for $172,000.  The trustee's deed upon sale was
recorded on November 20, 1997, as instrument no. 97-1841001.

        Plaintiffs maintain that they never received a loan
from MBAC because they did not receive legal tender.  They claim
that discharging existing debt is not valid consideration for a

3

loan and that they do not need to repay a loan which they never received.  Based on this contention, Plaintiffs assert claims to set aside the trustee's sale, to cancel the trustee's deed, to obtain declaratory relief, for damages for breach of contract, for cancellation of instruments and for an accounting.

### B.    Procedural Summary

On December 8, 1997, Plaintiffs filed their Complaint. On March 10, 1998, Defendants Countrywide Home Loans, Inc., CTC Foreclosure Services Corporation and Federal Home Loan Mortgages Corporation ("Defendants") filed a Notice of Removal of Civil Action Under Federal Rule of Civil Procedure 28 U.S.C. § 1442 (Federal Party).  On March 12, 1998, Defendants filed their Answer.

The discovery cut-off date is January 22, 1999; the pre-trial conference date is February 22, 1999; and trial is set for April 20, 1999.

On November 30, 1998, Defendants filed a Motion for Summary Judgment, or in the Alternative, for Partial Summary Judgment, which is currently before this Court.[1]

---

[1] This Court notes that Plaintiffs filed an Opposition and Declaration to the instant motion on January 6, 1998, just five days prior to the hearing date rather than the fourteen days required by Local Rule 7.6.  In fact, Defendant had already filed and served its Reply.  Nevertheless, this Court has considered Plaintiffs' papers.  This Court also notes that Plaintiffs failed to file a Statement of Genuine issues of Material Fact setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated.

4

II.  **Discussion**

    A.  **Standard**

Under the Federal Rules of Civil Procedure, summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986). If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial. Id.; see Fed. R. Civ. P. 56(e).

A non-moving party who bears the burden of proof at trial to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). Such an issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. Anderson, 477 U.S. at 250-51, 106 S. Ct. at 2511. The non-movant's burden to demonstrate a genuine issue of material fact increases when the factual context renders her claim implausible. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). Thus, mere

1 | disagreement or the bald assertion that a genuine issue of
2 | material fact exists no longer precludes the use of summary
3 | judgment.  Harper v. Wallingford, 877 F.2d 728 (9th Cir. 1989);
4 | California Architectural Building Prods., Inc. v. Franciscan
5 | Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987), cert.
6 | denied, 484 U.S. 1006 (1988).

7 | **B.   Plaintiffs Received a Loan Supported by Valid**
8 | **Legal Consideration**

9 | Defendants assert that they are entitled to judgment
10 | because Plaintiffs received a loan, and following Plaintiffs'
11 | default, Defendants fully complied with all the requirements of
12 | California Civil Code sections 2924-2924i, and the sale was
13 | properly conducted.

14 | Defendants first address Plaintiffs' claim that since
15 | Plaintiffs never received a loan, they did not need to make any
16 | payments to Defendants, and Defendants' efforts to foreclose are
17 | improper.  Specifically, Defendants contend that Plaintiffs
18 | received a loan supported by valid legal consideration.  This
19 | Court agrees.

20 | Plaintiffs paid $265,000 for their home.  They paid for
21 | their home with $165,000 cash from the sale of previously owned
22 | property and a $105,000 loan from Columbia.  Plaintiffs gave
23 | Columbia a promissory note and deed of trust, and they made
24 | payments to Columbia for a year or two.  While Plaintiffs owned
25 | their home, they also borrowed $70,000 from Western and used
26 | their home as security.  The Western loan was used to discharge
27 |
28 |

1  existing debt.  They gave Western a note secured by a deed of

2  trust encumbering the Property.  In 1992, Plaintiffs owed

3  Columbia approximately $100,000 and Western approximately

4  $70,000.  They refinanced the Columbia and Western debts with a

5  new loan from MBAC.  Plaintiffs gave MBAC a promissory note

6  secured by a deed of trust.  Plaintiffs specifically testified

7  that their $180,000 loan from MBAC discharged the two prior loans

8  to Columbia and Western and paid the closing costs for their new

9  loan.  (C. Oasay Depo., 24:10-25:2.)

10        The paying off of existing debt is sufficient

11  consideration to support the repayment requirement on a new loan.

12  Battle v. Niece (1941) 43 Cal. App. 2d 655, 658; M. Kanter Silk

13  Corp. v. Cramer (1934) 136 Cal. App. 755, 759; Cal. Civ. Code §

14  1614.  In essence, Plaintiffs were exchanging two loans for a new

15  loan at a lower rate.  Both Columbia and Western reconveyed their

16  deeds of trust.  This new loan was assigned to Countrywide.

17  Plaintiffs acknowledged their debt to Countrywide by making loan

18  payments from 1992 through February 1997.  As such, this Court

19  finds that Countrywide held a valid note and deed of trust given

20  by Plaintiffs and supported by adequate consideration - the

21  repayment of their existing debt.

22        C.    Countrywide Has Complied with the Foreclosure

23              Statutes and the Loan Contract

24        Defendants contend that the foreclosure sale was

25  conducted in full compliance with the requirements of California

26  Civil Code sections 2924-2924i.  Sections 2924-2924i set forth

27

28                                  7

all the requirements for a proper non-judicial foreclosure.  I.E.
Associates v. Safeco Title Insurance Co. (1985) 39 Cal. 3d 281,
288.  Sections 2924-2924i represent an exhaustive statutory
scheme intended to cover every aspect of the foreclosure process.
Id. at 285.  "In short, there is no authority for the proposition
that a trustee under a deed of trust owes any duties with respect
to exercise of the power of sale beyond those specified in the
deed and the statutes."  Id. at 288.

### 1.   The notice of default was prepared and processed in full compliance with the Civil Code requirements

The foreclosure was initiated by way of a notice of
default and election to sell under deed of trust following
Plaintiffs' default on the debt.  The notice of default was filed
for record in the office of the recorder for the county in which
the subject property is located. Cal. Civ. Code § 2924.  Here,
it was recorded in the Los Angeles County Recorder's Office on
May 5, 1997, as instrument no. 97-676727.  (Defendants' Ex. 25.)
Within ten days following the recordation of the notice of
default, the trustee shall send the trustor by registered or
certified mail a copy of the notice of default with the recording
date showing thereon.  Cal. Civ. Code § 2924b(b)(1).  Here, on
May 7, 1997, within the ten business day requirement, the trustee
mailed a copy of the notice of default by certified mail to
Plaintiffs.  (Behr Decl., ¶ 10; Ex. D.)  At the same time that
the notice of default is sent out by registered or certified

8

1  mail, the trustee must send the trustor another copy by first

2  class mail.  Cal. Civ. Code § 2924b(e).  This section further

3  requires that an affidavit to that effect be maintained in the

4  trustee's file, and in the absence of fraud, the affidavit

5  required by that subdivision establishes a conclusive presumption

6  of mailing.  In this case, the trustee mailed Plaintiffs the

7  notice of default by first class mail on May 7, 1997, and

8  completed the affidavit of mailing.  (Behr Decl., ¶ 10; Ex. D.)

9  In light of the above, this Court finds that the trustee properly

10  recorded the notice of default and mailed it to the trustor by

11  certified mail in full compliance with all statutory

12  requirements.

13            2.    **The trustee processed the notice of sale in**

14                  **full compliance with the Civil Code**

15                  **requirements**

16            After more than three months after recording the notice

17  of default, as required by Civil Code section 2924c, the trustee

18  prepared the notice of trustee's sale on August 6, 1997.

19  (Defendants' Ex. 30.)  It was properly recorded on August 8,

20  1997, in the official records of Los Angeles County.  (Id.)

21  Civil Code section 2924f requires that the notice of sale be

22  posted in a conspicuous place on the property and in a public

23  place in the judicial district at least 20 days prior to the date

24  of the sale.  The trustee posted copies of the notice of sale on

25  the front of the property and in a public place in the city on

26  August 6, 1997, more than 20 days prior to the scheduled August

27

28                                    9

27, 1997, sale.  (Behr Decl. ¶ 13.)  The notice of sale must be published once a week for the same period in a newspaper of general circulation published in the city in which the property is situated.  Cal. Civ. Code § 2924f.  Here, the notice of trustee's sale was published on August 6, 13 and 20, 1997, in the Carson Bulletin, a newspaper adjudged by the Superior Court to be a newspaper of general circulation.  (Ex. G; Behr Decl., ¶ 14.) At least 20 days prior to the sale, a copy of the notice of sale must be sent by registered or certified mail to each person to whom the notice of default was mailed.  Cal. Civ. Code § 2924b(c).  Here, the trustee sent by certified mail the notice of trustee's sale to Plaintiffs on August 6, 1997.  (Behr Decl., ¶ 12; Ex. E.)  At the same time the notice of sale is sent by certified mail, it must be sent to the trustor by first class mail.  Cal. Civ. Code § 2924b(e).  In this case, the trustee mailed the notice of trustee's sale to Plaintiffs and completed the affidavit of mailing.  (Behr Decl., ¶ 12; Ex. E.)  As with the notice of default, the existence of this affidavit is conclusive evidence of mailing.  In light of the above, this Court finds full compliance with the requirements for processing the notice of sale - recording, posting, publishing and mailing by first class and certified mail.

1           3.    **The postponement of the sale was announced**

2                   **properly and no other notice of sale was**

3                   **required**

4          The procedure concerning postponement is contained

5   within Civil Code section 2924g, which provides:

6          (c)(2) The trustee shall postpone the sale

7          upon the order of any court of competent

8          jurisdiction, or where stayed by operation of

9          law . . . any postponement pursuant to this

10         paragraph shall not be a postponement for

11         purposes of determining the maximum number of

12         postponements permitted pursuant to this

13         subdivision nor shall a postponement

14         resulting from the prohibition upon a sale

15         within seven days from the expiration of an

16         injunction, restraining order, for a stay as

17         provided in subdivision (d) be deemed a

18         postponement for purposes of this subdivision

19         . . . .

20         (d) The notice of each postponement and the

21         reason therefore shall be given by public

22         declaration by the trustee at the time and

23         place last appointed for sale.  A public

24         declaration of postponement shall also set

25         forth a new date, time, and place of sale,

26         and the place of sale shall be the same place

27

28                     11

1        as originally fixed by the trustee for the

2        sale.  No other notice of postponement need

3        be given.  However, the sale shall be

4        conducted no sooner than on the seventh day

5        after the earlier of (1) dismissal of the

6        action or (2) expiration or termination of

7        the injunction, restraining order, or stay .

8        . . .  The trustee shall maintain records of

9        each postponement and the reason therefor.

10   Cal. Civ. Proc. § 2924g(c)(2) and (d).  In addition, the mere

11   announcement of a postponement of a non-judicial foreclosure sale

12   does not constitute an action taken adverse to the bankruptcy

13   estate.   In re Roach, 660 F.2d 1316, 1318 (9th Cir. 1981).

14        Defendants contend, and this Court agrees, that the

15   trustee specifically complied with the provisions of Section

16   2924g.  Mr. Oasay filed a bankruptcy petition on August 25, 1997,

17   and a notice of dismissal of his bankruptcy case was served on

18   October 3, 1997.  (Defendants' Exs. 32 and 33.)  Each time the

19   bankruptcy stay was in place, the trustee's sale was postponed.

20   Each postponement was announced by public declaration given at

21   the time and place last appointed for sale.  (Behr Decl., ¶ 16.)

22   In each instance, the auctioneer announced the new date, time and

23   place of the sale, the reason was given as the bankruptcy, and

24   written records were maintained.  Each and every postponement was

25   as a direct result of the bankruptcy stay or of the seven-day

26   period following the termination of the stay.  Under these

27

28                              12

1   circumstances, this Court finds that the oral postponement

2   procedure was in compliance with the Civil Code and "no other

3   notice of postponement need be given."

4           4.   The trustee's sale took place as properly

5                postponed

6           After the prior announced postponements, the trustee's

7   sale took place as scheduled on November 18, 1997.  (Behr Decl.,

8   ¶ 18.)  At that time, the property was sold to the Federal

9   National Mortgage Association pursuant to the opening bid, as

10  documented in a recorded trustee's deed upon sale.  (Defendants'

11  Ex. J.)  As such, Plaintiffs no longer have any interest in the

12  Property.

13          D.   Each of the Causes of Action in the Complaint

14               Based on the Improper Foreclosure is Without Merit

15               As a Matter of Law

16          As set forth above, the trustee's sale resulted from

17  Plaintiffs' default on their loan.  The trustee complied with all

18  requirements of the Civil Code, and the sale was completed.  As

19  such, no basis exists to set aside the trustee's sale or to

20  cancel the trustee's deed.  Similarly, there is no basis for the

21  declaratory relief sought by Plaintiffs.  With respect to

22  Plaintiff's breach of contract cause of action, it is without

23  merit, since, as set forth above, discharging a prior debt is

24  consideration for a new loan.  Likewise, Plaintiffs' claim for

25  cancellation of instruments is without merit.  Finally,

26  Plaintiffs' claim for an accounting is without merit since thy

27

28                              13

1  have no property in which to provide an accounting.  Plaintiffs

2  acknowledge making no payments after February 1997; the sale did

3  not occur until the end of 1997.

4          E.      **Plaintiffs Have No Standing to Challenge the Sale**

5                  **Since They Have Not Tendered the Undisputed Amount**

6                  **Owing on the Loan**

7          Defendants further assert that unless and until

8  Plaintiffs make all of the undisputed payments owing on the loan,

9  they have no standing even to challenge the foreclosure sale.

10 This Court agrees and finds that summary judgment is appropriate

11 on this additional grounds as well.

12         It is well-established that a trustor is not entitled

13 to enjoin a foreclosure sale unless he has first tendered the

14 undisputed obligation in full.  United States Cold Storage v.

15 Great Western Savings & Loan Association (1985) 165 Cal. App. 3d

16 1214, 1222.  "A valid and viable tender of payment of the

17 indebtedness owing is essential to an action to cancel a voidable

18 sale under a deed of trust."  Karlsen v. American Savings & Loan

19 Association (1971) 15 Cal. App. 3d 112, 117.  The Court in

20 Karlsen quoted the California Supreme Court in one of its

21 earliest decisions on the subject: "It is apparent from the

22 general tenor of the decisions that an action to set aside the

23 sale, unaccompanied by an offer to redeem, would not state a

24 cause of action which a court of equity would recognize."  Id.

25 (internal quotations and citations omitted.)  In the present

26 case, Plaintiffs have not tendered the undisputed amount.  They

27

28                              14

1   have been in default since February 1997, and they state that

2   they do not have the money to repay the loan.  (C. Oasay Depo.,

3   31:10-17.)  As such, this Court finds that Plaintiffs have no

4   standing to challenge the foreclosure sale.

5           **F.   Conclusion**

6           This Court finds that Defendants have shown that no

7   triable issue of material fact exists and that they are entitled

8   to summary judgment as a matter of law.  Accordingly, this Court

9   **grants** Defendants' Motion for Summary Judgment.

10

11          IT IS SO ORDERED.

12

13   DATED: 1—11—99

14                                    Dickran Tevrizian, Judge
                                      United States District Court

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                   15